* * * * * * * * * * * *Page 2 
Based upon the opinion of the Court of Appeals remanding the matter to the Commission for the sole purpose of providing an explicit ruling as to whether defendant must reimburse plaintiff for past out-of-pocket medical expenses, the Full Commission amends the September 27, 2006 Opinion and Award at Finding of Fact 13, adds a new Finding of Fact 14, and amends Conclusion of Law 4, as follows:
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant is a duly qualified self-insured.
3. The employee-employer relationship existed between the parties at all relevant times between.
4. The alleged date of diagnosis was March 14, 1994.
5. Former Deputy Commissioner Dollar previously heard a claim on May 14, 1996, following which an Opinion and Award was filed on May 14, 1997. Pursuant to the Award, plaintiff was found to have asbestosis and was awarded 104 weeks of compensation at the rate of $308.00 per week. This decision was upheld by the Full Commission Opinion and Award filed on January 20, 1998. Defendant paid plaintiff the 104 weeks of compensation in accordance with these Opinions by March of 1998. *Page 3 
6. Plaintiff has undergone three follow-up medical examinations, pursuant to the two previous Opinions and Award.
7. The issues for determination are:
 a. To what, if any, additional compensation is plaintiff entitled to receive?
 b. Should defendant be found in contempt for its willful failure to comply Commission Orders, requiring it to pay plaintiff's medical expenses consistent with the prior Opinions and Award?
 c. Is the issue of the third-party proceeds properly before the Commission?
 d. Is defendant entitled to a credit for the 104 weeks of compensation paid to plaintiff?
 e. Is plaintiff's claim for permanent and total disability barred by the statutes of limitations and repose?
 f. Did plaintiff properly disburse the third-party settlement proceeds he obtained as a result of his claim for asbestos?
 g. Should the prior Opinion and Award be reversed based upon medical evidence of the last three years?
8. The following documentary evidence was stipulated into the record:
 a. Opinion and Award of the Deputy Commissioner, filed May 14, 1997,
 b. Opinion and Award of the Full Commission, filed January 20, 1998,
 c. Plaintiff's Motion for Payment of Out-of-Pocket Medical Expenses,
 d. Administrative Order, filed June 4, 2002,
 e. Administrative Order, filed June 25, 2002,
 f. Medical records, *Page 4 
 g. Panel examination, thirty-one pages,
 h. Settlement statements from Baron Budd,
 i. Plaintiff's Petition for Order Extinguishing the Workers' Compensation Lien,
 j. Superior Court Order, Extinguishing the Workers' Compensation Lien,
 k. I.C. Forms and Filings,
 l. Transcript of prior hearing, and
 m. Civil Pleadings and Order related to plaintiff's third-party settlement and defendant's lien under N.C. Gen. Stat. § 97-10.2.
9. Plaintiff filed a Motion to hold defendant in contempt for willful failure to comply with the two prior Opinions and Award and the two Commission Orders.
10. The two prior Opinions and Award and the two Commission Orders remain in effect, and the purpose of these Orders may still be served by compliance.
 * * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was sixty-eight years old with a ninth grade education. In the early 1950s plaintiff was a helper and pipe fitter with Southern Piping and Engineering where he handled asbestos materials. Between 1957 and September 30, 1987, he worked for defendant-employer as a general laborer and local route driver from its Charlotte terminal. Regular customers included five businesses which regularly produced asbestos products, which defendant would pick up for transport several times each *Page 5 
week. As a part of his duties, plaintiff loaded and unloaded freight and swept out the trailers where the boxes and bags often had become unsealed allowing asbestos dust in the air.
2. Plaintiff was exposed to asbestos on a regular basis for more than thirty working days or parts thereof inside of seven consecutive months from 1957 through 1987, and was exposed to asbestos in the State of North Carolina for as much as two years inside often years prior to his last exposure to asbestos.
3. Plaintiff retired from employment on September 30, 1987, due to shortness of breath and respiratory problems related to his asthma. Plaintiff stated that his breathing problems had gotten worse since he retired.
4. On June 7, 1993 plaintiff underwent a chest x-ray and CT scan, which were ordered by his family physician, Dr. Cutchin. Following these tests, Dr. Cutchin reviewed the findings, and reported plaintiff had multiple pleural nodules and plaques, consistent with asbestos exposure.
5. On March 14, 1996, plaintiff was seen by Dr. Edward Landis and following additional testing, he was diagnosed with asbestosis and a Class II impairment based on a CT scan read by Dr. Gromet on March 14, 1994. Dr. Landis did not continue to provide care for plaintiff.
6. Plaintiff has treated with Dr. John A. Dew, a pulmonologist at Piedmont Pulmonary Consultants, since 1997. Dr. Dew had pulmonary function tests conducted at his office for 1997, 2001, and 2002. Dr. Dew found in his review of plaintiff's chest x-rays there was evidence of pleural plaquing but no evidence of interstitial disease or fibrotic conditions in the interior of the lungs. Dr. Dew stated on physical examination, the American Thoracic Society Guidelines for the diagnosis of asbestosis were not met by plaintiff. Dr. Dew stated that *Page 6 
plaintiff suffers from asbestos related lung disease, mostly pleural plaquing and mild to moderate non work-related obstructive lung disease. He opined plaintiff was unable to tolerate strenuous work and should be limited to an environment free of dust or chemical irritants due to his asthma.
7. On April 9, 1998, Dr. D. Allen Hayes, Certified NIOSH "B" reader, Dr. Brian Boehlecke, and Dr. H. F. Eason filed their report of plaintiff's occupational pulmonary evaluation on behalf of the Advisory Medical Committee. Plaintiff reported a twenty-year history of asthma and difficulty breathing. Chest x-rays show evidence of pleural disease. Plaintiff was found to have asbestos associated pleural plaques, bilateral, extensive; CT scan read by Dr. Gromet in 1994 suggestive of parenchymal fibrosis (asbestosis); and chronic obstructive pulmonary disease, mild, with prior history of asthma and tobacco usage. He was found to have an AMA Class II pulmonary impairment, secondary to asthma, asbestos exposure and tobacco usage. The panel noted it is impossible to apportion the relative contributions of each, but the obstructive pulmonary impairment would more favor the asthma and smoking as having caused the impairment than the asbestos exposure.
8. Dr. Kelling performed plaintiff's third panel examination on August 4, 2000 and found the pulmonary function test suggestive of asthma.
9. Dr. Hayes testified plaintiff had a class III pulmonary impairment, based upon a reduced FEV/FEV-1. Based upon that reduction and his flow rated over time, Dr. Hayes felt plaintiff had an obstructive condition that was classic in nature and that would require a disability rating. Dr. Hayes stated that, by definition, asbestosis is a restrictive condition, not an obstructive condition; however it can, in some limited cases, appear obstructive on pulmonology testing. Therefore, Dr. Hayes could not exclude the possibility that plaintiff suffered from *Page 7 
asbestosis, and, in fact, he stated that he felt that plaintiff did have asbestosis. Dr. Hayes stated that could not separate plaintiff's asthmatic conditions and asbestos-related lung disease to determine the cause of plaintiff's impairment, although if plaintiff had no other lung conditions other than the asbestosis related lung disease, Dr. Hayes believed he could be capable of gainful employment. Considering plaintiff's age, education, work history as well as his health conditions, Dr. Hayes felt that plaintiff was unable to earn the same or greater wages in the same of any other employment.
10. Pulmonologist Dr. Brian Boehlecke participated in the review in 1998 of plaintiff's examination on behalf of the advisory panel. He reviewed plaintiff's medical records and pulmonary studies, following which he opined plaintiff had pleural plaquing due to asbestos exposure but no interstitial changes to support a diagnosis of asbestosis. Dr. Boehlecke never performed an examination of plaintiff. Based upon his review of the medical records, Dr. Boehlecke did not believe plaintiff was disabled from work as a result of the pulmonary function testing. Any impairment he might have was related to emphysema, cigarette smoking or asthma.
11. The testimony of Dr. Hayes is given greater weight than the testimony of Dr. Boehlecke and Dr. Dew.
12. Plaintiff has incurred costs of $1,965.13 for prescription medications for which defendant contends are unrelated to the diagnosis of asbestosis but rather are related to his COPD and asthma. Plaintiff had been prescribed a bronchometer for his breathing problems since the late 1960s or early 1970s.
13. On April 4, 2002, plaintiff filed a Motion for Immediate Payment of Out-of-Pocket Expenses for Medications Prescribed for Asbestos-Related Illness. Defendant responded on April 10, 2002, asserting the medications were not related as plaintiff included in his claim *Page 8 
medications that he had been prescribed in the late 1960s, early 1970s for his asthma. By order filed on June 4, 2002, Special Deputy Commissioner Elizabeth Maddox granted plaintiff's Motion and ordered defendant to pay $1,965.13 to plaintiff for his out-of-pocket expenses for these medications and to continue to pay for these and other medications, which may be prescribed for the asbestos-related disease. Defendant appealed the issue to be determined de novo after an evidentiary hearing as there was a question as to the timeliness and relatedness of the expenses plaintiff was seeking. After review of all the testimony submitted and although the medicines were prescribed in the late 1960s and early 1970s for asthma as opposed to asbestosis there is medical evidence to support finding that these medications do provide some relief for plaintiff's work-related condition. However, the bills submitted by plaintiff in April 2002, covered prescription-related expenses incurred from 1997 through 2001. Plaintiff's submission of these expenses for reimbursement was not timely.
14. This workers' compensation action involved substantial questions of both fact and law, especially considering the age of the bills submitted and the supporting medical reports, therefore, the prosecution and defense of this action was not stubborn, unfounded or litigious.
15. On February 25, 2002, Chief Resident Superior Court Judge Larry Ford entered an Order fully extinguishing the defendant's lien and stated that the defendant is "barred from instituting any subrogation lien against third party settlement proceeds from asbestos manufacturers paid to Mr. Bolick, either past, present or future." However, this Order was entered after plaintiff's attorney had already disbursed Third Party settlement proceeds. Plaintiff has not sought an Order for Third Party Distribution from the Full Commission at this time.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following: *Page 9 
 CONCLUSIONS OF LAW
1. Since plaintiff has proven that he has been totally and permanently impaired since March 14, 1996 based upon his age, education, work experience, asbestosis and his pre-existing lung condition, the impairment from which cannot be apportioned, he is entitled to compensation as of March 14, 1996 at the rate of $308.00 per week and continuing for the remainder of his life. Morrison v. BurlingtonIndustries, 304 N.C. 1, 282 S.E.2d 458 (1981). N.C. Gen. Stat. § 97-29.
3. Defendant is entitled to a credit for the 104 weeks of compensation paid under N.C. Gen. Stat. § 97-61.5. N.C. Gen. Stat. § 97-42.
4. Plaintiff is entitled to have defendant pay for medical expenses incurred, when timely submitted, or to be incurred, as a result of the plaintiff's asbestos-related disease and asbestosis, as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1 and 97-59. Plaintiff did not timely submit the medical expenses related to his prescription medications that were the subject of his April 4, 2002 Motion for Immediate Payment of Out-of-Pocket Expenses for Medications Prescribed for Asbestos-Related Illness. As such, defendants are not obligated to reimburse plaintiff for these expenses. However, henceforth, defendants shall pay for medications as found herein to provide relief for plaintiff's work-related condition.
5. The prosecution of this claim was reasonable and not based on stubborn unfounded litigiousness, and therefore plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
6. The Industrial Commission does not have jurisdiction over plaintiff's attorney's failure to first obtain an Order from the Superior Court before distributing Third Party funds as *Page 10 
the only authority the Full Commission has is to enter an Order pursuant to N.C. Gen. Stat. § 97-10.2(j) according to a Superior Court Judge's Order determining defendant's lien.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay plaintiff weekly compensation at the rate of $308.00 per week commencing on March 14, 1996 and continuing for the remainder of his life. This amount is subject to defendants' credit for the 104 weeks paid previously. As much of said compensation as has accrued shall be paid to plaintiff in one lump sum without commutation.
2. Plaintiff's motion for civil contempt must be and is hereby DENIED.
3. Defendant shall pay medical expenses, when timely submitted, incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff may file a motion hereafter with the Executive Secretary seeking distribution of third party funds.
5. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded plaintiff in paragraph 1 is hereby approved
6. Defendant shall pay the costs.
This the 13th day of May 2008.
S/_____________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________________ DANNY LEE McDONALD COMMISSIONER *Page 1